236 F.3d 78 (2nd Cir. 2001)
 ALFONSE M. D'AMATO, Special Master,
HAROLD WATMAN, on behalf of himself and all other persons similarly situated; RUTH ABRAHAM, on behalf of herself and all other persons similarly situated; MICHAL SCHONBERGER, on behalf of himself and all other persons similarly situated; Plaintiffs-Appellees,
GERALD HAAS; CHARLOTTE HASS SCHUELLER; GABRIELE HAMMERSTEIN; HELEN NIGHTENGALE; ALICE NIGHTENGALE LUHAN; SIMON BRONNER, Consolidated Plaintiffs-Appellees,
v.
DEUTSCHE BANK; DRESDNER BANK; GERMAN BANKING INSTITUTIONS #1 - 100, Defendants.
RUDOLFINE SCHLINGER; ERNESTINE SCHWARZ WASYL, Plaintiffs-Appellees,
v.
CREDITANSTALT AG; BANK AUSTRIA AG, Defendants-Appellees,
PETER GEORGI, Movant-Appellant.
 Docket No. 00-7130
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: June 27, 2000
Decided: January 04, 2001
 
 Appeal from the judgment of the United States District Court for the Southern District of New York (Shirley W. Kram, Judge) entered January 12, 2000, certifying the plaintiff class for settlement purposes and approving as fair the settlement agreement between Plaintiffs and Defendants, and denying Peter Georgi's motion to intervene.
 AFFIRMED.[Copyrighted Material Omitted]
 Peter Georgi, pro se, Woodland Hills, California.
 Robert Swift, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania (Dennis F. Sheils, Neil L. Glazer, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania, on the brief; Lawrence Kill, Anderson, Kill & Olick, P.C., New York, New York, on the brief; Edward D. Fagan, Fagan & D'Avino, LLP, Livingston, New Jersey, on the brief), for Plaintiffs-Appellees.
 Charles G. Moerdler, Stroock, Stroock & Lavan LLP, New York, New York (Curtis C. Mechling, James A. Shifran, David A. Javdan, Emily Culpepper, Stroock, Stroock & Lavan LLP, New York, New York, of counsel), for Defendants-Appellees.
 Before: LEVAL and PARKER, Circuit Judges.*
 PARKER, Circuit Judge:
 
 
 1
 Peter Georgi, pro se, appeals from the judgment of the United States District Court for the Southern District of New York (Shirley W. Kram, Judge) entered January 12, 2000, denying his motion to intervene and approving the settlement in this consolidated class action. Plaintiffs, who are members of groups persecuted by the Nazi regime during World War II, seek redress for various torts and international law violations committed against them by, among other defendants, Bank Austria AG and Creditanstalt AG, (collectively "the Austrian Banks").[1] After reaching a settlement agreement, Plaintiffs and Defendants sought both certification of the plaintiff class for settlement purposes and approval of the settlement. Appellant Georgi, a purported member of the class, moved to intervene and to add the Republic of Austria and Brown Brothers Harriman (a private bank) as defendants. Georgi objected to the adequacy of the settlement, claiming that it is insufficient to cover even his claim against the Austrian Banks. He also claimed that the existing parties were providing inadequate representation.
 
 
 2
 For reasons set forth below, we affirm the District Court's order that Georgi's motion to intervene be denied as untimely. Further, we affirm the District Court's approval of the settlement.
 
 I. BACKGROUND
 A.Historical Background
 
 3
 In 1938, German troops invaded Austria and annexed it into the German Reich in what is now known as the Anschluss. Subsequent to this annexation, the Nazi regime took control over major Austrian financial institutions, including Creditanstalt and Landerbank (which was later merged into Bank Austria). During the period from 1938 to 1945, these banks participated in a process called "Aryanization" whereby the Nazi regime seized assets and properties belonging to Jewish residents.
 
 B. The Instant Action
 
 4
 Beginning in mid-1998, several individual and class actions were filed against the Austrian Banks, as well as Deutsche Bank, Dresdner Bank, Commerzbank and Hypo Bank (collectively, "the German Banks") in both the Southern and Eastern Districts of New York, alleging that the banks had committed various torts and violations of international law in cooperation with the Nazi Regime. After transfer of the Eastern District actions to the Southern District of New York, these actions were consolidated for all purposes pursuant to a February 19, 1999 order. On March 17, 1999, plaintiffs filed a consolidated class action complaint against the Austrian and German Banks. The consolidated complaint alleged that defendant banks cooperated and conspired with the Nazi Regime to convert plaintiffs' assets on deposit with defendant banks and to exploit and profit from slave and forced labor.
 
 
 5
 In December 1998, the District Court appointed Alfonse D'Amato as Special Master to supervise and facilitate settlement negotiations between the parties. Formal discovery was not done, but, over several months, the Austrian Banks produced many documents and provided extensive access to their records. In March 1999, after several meetings and telephone conversations, the Austrian Banks and the plaintiff class reached a settlement agreement in the amount of $40 million.
 
 
 6
 On June 24, 1999, the District Court granted preliminary certification of the class for settlement purposes and granted preliminary approval of the settlement. At the same time, it scheduled a hearing for November 1, 1999 to determine whether the settlement was fair, reasonable and adequate (the "Fairness Hearing").
 
 
 7
 In July 1999, the District Court approved the plaintiffs' proposed form of notice and the notice campaign. The approved form of notice included a description of the essential settlement terms, an explanation of the claims procedure and mechanism for receiving claim forms, as well as a cautionary statement that those class members who chose not to opt out would be bound by the terms of the settlement. Additionally, the notice alerted class members to their right to opt out and/or to present written objections to the settlement by an October 18, 1999 deadline.
 
 
 8
 Between August 13, 1999 and September 18, 1999, notice was mailed to 27,883 Austrian Holocaust survivors. To further achieve the 'best notice practicable,' the notice campaign also utilized newspaper advertisements, direct mailings to organizations throughout the world, and a world wide web home page.
 
 
 9
 Three days prior to the Fairness Hearing, on October 29, 1999, appellant Georgi filed his motion to intervene. He sought to add as defendants Brown Brothers Harriman (a private bank) and the Republic of Austria. Additionally, in his motion to intervene, he objected to the settlement terms and alleged he was being inadequately represented by the existing parties.
 
 
 10
 On November 1, 1999, the District Court conducted the Fairness Hearing. Plaintiffs and Defendants presented evidence regarding the fairness of the settlement, including testimony by John Rees regarding the role of the Austrian Banks in the Aryanization efforts and by Alphonse D'Amato regarding the negotiation process. Georgi and five other objectors to the settlement appeared at the Fairness Hearing and were given an opportunity to present their objections.
 
 C. The Settlement's Terms
 
 11
 The key terms of the settlement are summarized below.
 
 1. The Settlement Funds
 
 12
 The Austrian Banks shall fund a "Humanitarian Fund" in the sum of $30 million to be disbursed in installments, with $15 million to be disbursed within 20 days of the settlement's effective date[2] and the remaining $15 million within one year after the prior payment. The Humanitarian Fund shall be used to pay Allowed Claims.[3] By a July 28, 1999 order, Judge Kram appointed the following three members to the Humanitarian Fund committee to administer the fund: (1) Simon Wiesenthal; (2)Miriam M. Robinson, Esq.; and (3) Rabbi Gilbert S. Rosenthal.
 
 
 13
 The Austrian Banks shall also pay $10 million as an "Administrative and Interim Allowed Claim Fund" payable within twenty days after the execution of the agreement. This fund will be used to pay administrative costs, to pay Interim Allowed Claims, and to fund a Historical Commission.
 
 2. Interim Allowed Claims Fund
 
 14
 The Interim Allowed Claims settlement process will be used to expedite the review and award of allowable claims by the Honorable Theodore R. Kupferman. Any awards made pursuant to this process shall be deemed final, and are deducted from the sum due by the Austrian Banks for funding the Administrative and Interim Allowed Claims Fund. Any challenge to the reasonableness of the awards granted shall be made to the Court.
 
 3. Historical Commission
 
 15
 The Historical Commission will be created to ensure the preservation of documentation and information relating to the acts alleged in the Complaint, and to maintain a public archive of these materials, and to identify Class members. The Commission shall have access to the Austrian Banks' records and shall investigate and publish a report regarding the activities of the Austrian Banks during the Nazi era.
 
 
 16
 By a July 28, 1999 order, Judge Kram appointed the members of the Historical Commission: (1) Dr. Heinricht Senfft; (2) Professor Oliver Rathkolb; and (3) Dr. Theodore Venus.
 
 4. The Claims Process
 
 17
 Claims will be processed and valued by an Individual Claims Officer, subject to review on appeal by the Individual Claims Committee. The Committee shall consist of three members, the majority of which shall be, if possible, Holocaust survivors. This committee will establish standards to determine which claims shall be allowed and the amount of these claims. The Committee shall also have discretion to pay all or a portion of any claim on an expedited basis, subject to Court approval. Any disputes shall be resolved by the Court.
 
 
 18
 By a July 28, 1999 order, Judge Kram appointed the following members of the Claims Committee: (1) Paul D. Wachter, Esq.; (2) Hon. Theodore R. Kupferman; and (3) Guy Velella, Esq.
 
 
 19
 5. Succession/Assignment of Austrian Banks' Claims
 
 
 20
 The Austrian Banks assigned to the Class any and all of its claims for restitution, indemnification, or contribution against any financial institution or commercial enterprise that exercised dominion or control over the Austrian Banks during the period of January 1, 1938 through December 31, 1946.
 
 
 21
 The Austrian Banks shall locate and provide to the Class all documents in their custody and control which relate to, or witnesses in their employ who have knowledge regarding, any claims that the plaintiffs have or may have against the German Banks, including but not limited to information concerning the exercise of control by the German Banks over the Austrian Banks.
 
 II. DISCUSSION
 
 22
 Appellant Peter Georgi contends on appeal that the District Court improperly denied his motion to intervene, and that it improperly approved the settlement.[4]
 
 A. Georgi's Motion to Intervene
 
 23
 Appellant seeks to intervene pursuant to Federal Rule of Civil Procedure 24. He claims an interest relating to the property which is the subject of the action, and that his interests will be impaired if he is not permitted to intervene to add two defendants, who he contends are indispensable parties. We review a district court's denial of a motion to intervene for abuse of discretion. See In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000).
 
 
 24
 Rule 24(a)[5], intervention of right, requires that the proposed intervenor "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." Id. (citing Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)). Denial of the motion to intervene is proper if any of these requirements is not met. See id., 225 F.3d at 197.
 
 
 25
 The determination of the timeliness of a motion to intervene is within the discretion of the district court, "evaluated against the totality of the circumstances before the court." Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Markets, 847 F.2d 1038, 1043-44 (2d Cir. 1988) (citations omitted). Circumstances considered in this determination include: "(1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994) (citations omitted).
 
 
 26
 Here, the District Court focused primarily on the first factor, the length of appellant's notice of his interest in the action, in denying his motion to intervene. See In re Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d 164, 172 (S.D.N.Y. 2000). Appellant filed his motion to intervene on October 29, 1999, more than a year after the complaint was filed, approximately three months following the district court's order that notice be sent to class members, and three days prior to the Fairness Hearing scheduled by the district court. Appellant offers no explanation for waiting to file his intervention motion until three days prior to the Fairness Hearing. The district court concluded that appellant, who claimed to have spent a substantial amount of time on Holocaust survivors' litigation, had notice of his interest in the instant action well before he filed his intervention motion and that he failed to establish that his motion was timely. See id. We agree.
 
 
 27
 As for the other factors, the district court noted that, especially in light of Georgi's request to add parties to the action, this late intervention would potentially derail the settlement and prejudice the existing parties, who had been engaging in settlement negotiations for several months. See id. The court noted, as well, that many claimants are elderly. See id. This Court has affirmed a denial of intervention in a similar case, where intervention would jeopardize a settlement between the existing parties and the proposed intervenor's explanation for the delay was inadequate. See Holocaust Victim Assets Litig., 225 F. 3d at 198-99. Because of this jeopardy to the settlement, the district court did not abuse its discretion when it concluded that the prejudice to the existing parties outweighs any prejudice to appellant and denied appellant's motion to intervene.
 
 B. Georgi's Objections to the Settlement
 
 28
 Appellant objects to the settlement terms as inadequate and unfair. Specifically, he contends that class counsel "misled" the District Court in their representation that the release of documents provided for in the settlement agreement would be important in the settlement negotiations with the German Banks. Additionally, he contends that class counsel under-represented the number of claims that would be made under the settlement. He also objects to the provision of the settlement agreement where the Austrian Banks claim "no admission of wrongdoing." Further, he argues that the $40 million amount is too low because it allows the Austrian Banks to keep money converted from Holocaust victims and because the Austrian Banks could withstand a higher judgment and makes a conclusory statement that his interests are being inadequately represented. Because Georgi offers only conclusory and speculative allegations and statements outside the record in support of his arguments, we find that the District Court did not abuse its discretion in approving the settlement. The District Court properly and thoroughly considered the factors required to assess a class action settlement.
 
 
 29
 Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court. See Fed. R. Civ. P. 23(e). The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, see County of Suffolk v. Long Island Lighting, 907 F.2d 1295, 1323 (2d Cir. 1990) (citing Plummer v. Chemical Bank, 668 F.2d 654, 658 (2d Cir. 1982)), and that it was not a product of collusion. See Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000). This Court will disturb a judicially-approved settlement only when an objector has made a "clear showing that the District Court has abused its discretion." City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000). When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness. See Long Island Lighting, 907 F.2d at 1323 (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)). The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms. See Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983) (citations omitted).
 
 
 30
 1. Procedural Fairness: The Negotiation Process
 
 
 31
 A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from "arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." Weinberger, 698 F.2d at 74. We are satisfied that the District Court in this case examined the negotiation process with appropriate scrutiny.
 
 
 32
 Here, the District Court expressly considered whether the negotiations were a result of "arm's length negotiations" and whether plaintiffs' counsel possessed the experience and ability to represent effectively the class's interests. Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d at 173-74. The District Court found that plaintiffs' counsel were "extremely experienced" and were involved in other Holocaust-related litigation. Id. at 174.
 
 
 33
 Additionally, the District Court appointed Special Master D'Amato to assist in the negotiation process, and he testified at the Fairness Hearing that the process was bona fide, at times contentious, and all counsel involved were capable. Id. This Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure. See Long Island Lighting, 907 F.2d at 1323.
 
 
 34
 Appellant argues on appeal that the counsel involved in this case were conflicted by their involvement in the German Banks settlement negotiations, and that counsel misrepresented to the District Court the importance of the Austrian Banks' agreement to provide access to its documents. These conclusory allegations, based on speculation and documents outside the record, are insufficient to warrant disturbing the District Court's approval of the settlement.
 
 
 35
 The District Court gave thorough attention to its inquiry into the negotiation process. The District Court's assessment that the settlement was the "product of arms-length [sic] negotiations conducted by experienced counsel, knowledgeable in complex class actions" was not clearly erroneous as to render its conclusion an abuse of discretion. Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d at 174.
 
 
 36
 2. Substantive Fairness: The Grinnell Factors
 
 
 37
 A district court reviewing a settlement must consider the following nine factors, enumerated initially in Grinnell Corp., 495 F.2d at 463:
 
 
 38
 (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]
 
 
 39
 Long Island Lighting, 907 F.2d at 1323-24 (quoting Robertson v. Nat'l Basketball Ass'n, 556 F.2d 682, 684 n.1 (2d Cir. 1977)). In this case, the District Court expressly considered each of the nine factors described above in assessing the fairness of this settlement. It also considered several specific contentions raised in eighteen written objections received. We are satisfied that Judge Kram's review was methodical, reasonable, and thorough. We therefore decline to intervene in the District Court's approval of the settlement in this case.
 
 
 40
 Appellant argues that the $40 million settlement amount is too low to cover even his claim. The District Court specifically addressed the settlement amount, noting that "it is unlikely that any sum of money, no matter how large, could ever be thought of as righting the wrongs committed during the Holocaust." Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d at 179. In reviewing the risks of proceeding to trial, establishing liability and damages, and the complexity, length and expense of litigation, the District Court concluded that, given the difficulties of coming forward with fifty year old evidence and the existence of possible defenses, the settlement was fair, reasonable and adequate.
 
 
 41
 Appellant also argues that the Austrian Banks could withstand a higher judgment. The District Court explicitly acknowledged that the defendants' ability to withstand a higher judgment weighed against the settlement, but explained that this factor, standing alone, does not suggest that the settlement is unfair. Id. at 178 n.9; see also In re Painewebber Ltd. Partnerships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997). This conclusion cannot be considered an abuse of discretion, given that other Grinnell factors weigh heavily in favor of settlement.
 
 
 42
 For example, the district court noted that, of the 27,883 notices sent to current or former Austrian citizens, seventy-two persons requested exclusion from the settlement and that it had received eighteen written objections and comments. See Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d at 175-76. The District Court properly concluded that this small number of objections weighed in favor of the settlement. See, e.g., Marisol A. v. Giuliani, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) ("The Court views the small number of comments from a plaintiff class of over 100,000 children as evidence of the Settlement Agreements' fairness, reasonableness, and adequacy."); In re Warner Communications Secs. Litig., 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (noting small number of objections and opt-outs, approving settlement).
 
 
 43
 Also, the district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information. Id. at 176. Thus, the "stage of proceedings" factor also weighed in favor of settlement approval.
 
 
 44
 Appellant simply has not demonstrated on appeal that this Court should disturb Judge Kram's approval of the settlement. We therefore conclude that Judge Kram, following her thorough application of the Grinnell factors, did not abuse her discretion in concluding that, under the unique circumstances of this difficult case, the settlement negotiated was fair and reasonable. We conclude that all other arguments of appellant are without merit.
 
 III. CONCLUSION
 
 45
 The District Court acted well within its discretion when it approved the settlement agreement, reached through arms-length negotiations of experienced counsel, concluding that the settlement's terms were fair, reasonable, and adequate.
 
 
 46
 For the foregoing reasons, we affirm the District Court's approval of the settlement agreement. We additionally affirm the District Court's denial of Appellant Georgi's motion to intervene as untimely.
 
 
 
 Notes:
 
 
 *
 Judge Robert A. Katzmann, originally a member of the panel sitting on June 27, 2000, recused himself and took no part in the disposition of this appeal. The remaining members of this panel, who are in agreement, have decided the case, pursuant to 2d Cir. R. § 0.14(b).
 
 
 [1]
 The consolidated class action complaint names both Austrian and German banking institutions, but only the Austrian Banks' settlement is before this Court.
 
 
 [2]
 The "Effective Date" is defined as the "date when the time for appeal or to seek permission to appeal a final order approving this Agreement under Federal Rule of Civil Procedure 23(e) and a Final Order and Judgment dismissing the Action as to the Austrian Banks . . . has expired, or, if appealed, when approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken . . . ."
 
 
 [3]
 "Allowed Claims" are claims by class members that have been approved for payment by the Individual Claims Committee and the Court.
 
 
 [4]
 Plaintiffs and Defendants have pointed out, in their briefs, that Georgi mistakenly appealed from the District Court's January 6, 2000 Memorandum Opinion and Order, rather than the District Court's January 12, 2000 final judgment approving the settlement. Plaintiffs contend that this defect is jurisdictional. We reject this contention and will entertain this appeal. See Krause v. Bennett, 887 F.2d 362, 367 n.2 (2d Cir. 1989) (exercising jurisdiction, although notice of appeal was "technically inaccurate in its description of the decision from which an appeal is taken" because it was clear that appellant intended to appeal from the proper judgment and appellee was not prejudiced in any way by the inaccuracy in the notice of appeal.)
 
 
 [5]
 Georgi's amended motion to intervene does not differentiate between intervention under Rule 24(a) and under Rule 24(b). The District Court analyzed his motion under Rule 24(a), and found it untimely. We note that even under Rule 24(b), permissive intervention, his motion was properly denied, given the District Court's proper finding that intervention would cause "intolerable delay" and that such delay would cause prejudice to the plaintiff class. Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d at 172; see Holocaust Victim Assets Litig., 225 F. 3d at 202 (affirming denial to permissively intervene where district court found that intervention would prejudice the rights of the existing parties).